**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **In Re: Rare Breed Triggers Patent Litigation** | **4:26-md-03176-ALM**<br>**MDL 3176** |
| ABC IP, LLC, RARE BREED TRIGGERS, INC., and RBTM LLC,<br>Plaintiffs,<br>v.<br>STARK80 LLC d/b/a STARK80, and MIGUEL PABLO ANDERT, an individual,<br>Defendants. | Civil Action No. 4:26-cv-01018-ALM<br>JURY TRIAL DEMANDED |

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND TRADEMARK INFRINGEMENT**

This is an action for patent infringement in which ABC IP LLC ("ABC") Rare Breed Triggers, Inc. ("Rare Breed"), and RBTM LLC ("RBTM") (collectively, "Plaintiffs") accuse Stark80 LLC d/b/a Stark80 ("Stark80") and Miguel Pablo Andert, also known as Michael Pablo Andert ("Andert") (collectively, "Defendants") of infringing U.S. Patent Nos. 12,038,247, 12,031,784, 12,529,538, 12,578,159, 10,514,223, 11,724,003, 12,036,336, 12,274,807, and 12,636,403; infringing Plaintiffs' trademark rights; and engaging in unfair competition as follows:

## I. PLAINTIFFS

1. ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2. Rare Breed is a Texas corporation having a place of business at 2710 Central Freeway, Suite 150-151, Wichita Falls, Texas 76306.

3. RBTM is a limited liability company organized under the laws of the State of Wyoming with an address at 1309 Coffeen Avenue, Suite 1200, Sheridan, Wyoming 82801. RBTM is a Plaintiff only on the trademark counts.

## II. DEFENDANTS

4. Upon information and belief, Stark80 is a limited liability company organized under the laws of the State of Wyoming with a principal place of business at 30 N Gould St., Ste. N, Sheridan, Wyoming 82801.

5. Upon information and belief, Stark80 operates the website www.stark80.com, through which it advertises, offers, and sells the Accused Products throughout the United States. That website describes Stark80 as a designer and manufacturer that performs CNC machining, laser cutting, heat treatment, and coating, and states that its products are "100% Designed, Material Sourced & Produced in the USA."

6. Upon information and belief, Andert is an individual named Miguel Pablo Andert, also known as Michael Pablo Andert, born in 1994. Upon information and belief, Andert resides in Mohave County, Arizona, and previously resided in Adelanto and Perris, California. Andert owns and operates Stark80, as alleged below.

## III. JURISDICTION

7. This Court has subject-matter jurisdiction over the patent claims under 28 U.S.C. §§ 1331 and 1338(a).

8. This Court has subject-matter jurisdiction over the Lanham Act claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), and over the related common-law claims under 28 U.S.C. §§ 1338(b) and 1367(a).

9. Plaintiffs filed this action in the United States District Court for the Middle District of Tennessee, No. 2:26-cv-00038, and the Judicial Panel on Multidistrict Litigation transferred it

to this Court under 28 U.S.C. § 1407 for coordinated pretrial proceedings. Personal jurisdiction and venue are therefore pleaded as to the Middle District of Tennessee, the transferor court. This First Amended Complaint adds Andert as a defendant in that transferred action.

10. Stark80 has admitted that personal jurisdiction over it is proper in the Middle District of Tennessee. (Dkt. 25 ¶ 8.)

11. Personal jurisdiction over Andert is proper there because, on information and belief, he personally directs Stark80's advertising and sales of the Accused Products through www.stark80.com, and those sales reach customers in the Middle District of Tennessee, including Stark80's March 25, 2026 sale of a "(PRESALE) Super Selector (MARC)," a MARC Selector of the Atrius Selector family, to former defendant Jeremiah Williamson in Gainesboro, Tennessee (Stark80 Order #1134). (*See* Dkt. 25 ¶ 5; Dkt. 33 at 4 n.1.). Portions of the order invoice are shown below.


Your Stark80 order has been received!

From: Stark80 <donotreply@stark80.com>
To: meme16a1@protonmail.com
Date: 3/25/26 5:32 PM

Text(value=

Thank you for your order

Hi Jeremiah,

Just to let you know — we've received your order, and it is now being processed.

Here's a reminder of what you've ordered:

Order summary

Order #1134 (March 25, 2026)

| Product | Quantity | Price |
| --- | --- | --- |
| (PRESALE) Super Selector (MARC) | ×1 | $175.00 |
| Subtotal: | | $175.00 |

Jeremiah Williamson
1872 Jennings Creek Hwy
Gainesboro, TN 38562
United States (US)
meme16a1@protonmail.com

Thanks again! If you need any help with your order, please contact us at stark1238@proton.me.

Stark80
United States of America

12. Venue is proper in the Middle District of Tennessee under 28 U.S.C. § 1400(b). Stark80 has admitted that venue is proper in that District (Dkt. 25 ¶ 9), and it has committed acts of infringement there, including the sales described below.

13. Venue is also proper there as to Andert because, on information and belief, he owns, controls, and actively manages Stark80 and personally directs its infringing sales into that District.

## IV. THE PATENTS-IN-SUIT

14. Plaintiffs assert the patents listed below (the "Patents-in-Suit"). Each is referred to by the last three digits of its number (for example, U.S. Patent No. 12,038,247 is the "'247 patent"). A copy of each is attached as the exhibit shown.

| Ex. | Patent | U.S. Patent No. | Title | Issued |
|---|---|---|---|---|
| A | '247 | 12,038,247 | Firearm Trigger Mechanism | July 16, 2024 |
| B | '784 | 12,031,784 | Adapted Forced Reset Trigger | July 9, 2024 |
| C | '538 | 12,529,538 | Safety Mechanism for Firearm | Jan. 20, 2026 |
| D | '159 | 12,578,159 | Firearm Trigger Mechanism | Mar. 17, 2026 |
| E | '223 | 10,514,223 | Firearm Trigger Mechanism | Dec. 24, 2019 |
| F | '003 | 11,724,003 | Firearm Trigger Mechanism | Aug. 15, 2023 |
| G | '336 | 12,036,336 | Firearm Trigger Mechanism | July 16, 2024 |
| H | '807 | 12,274,807 | Firearm Trigger Mechanism | Apr. 15, 2025 |
| I | '403 | 12,636,403 | Firearm Trigger Mechanism | May 26, 2026 |

15. Each Patent-in-Suit was duly and legally issued by the United States Patent and Trademark Office and is presumed valid. 35 U.S.C. § 282.

**Ownership and license**

16. ABC owns all right, title, and interest in and to the Patents-in-Suit. ABC holds them by assignment recorded at the United States Patent and Trademark Office, or as the original applicant, as shown below:

| Patent | U.S. Patent No. | Title | Assignment Reel/Frame |
|---|---|---|---|
| ’247 | 12,038,247 | Firearm Trigger Mechanism | 63791/0546 |
| ’784 | 12,031,784 | Adapted Forced Reset Trigger | 61657/0550 |
| ’538 | 12,529,538 | Safety Mechanism for Firearm | 72845/0001 |
| ’159 | 12,578,159 | Firearm Trigger Mechanism | Appl. filed by ABC IP LLC |
| ’223 | 10,514,223 | Firearm Trigger Mechanism | 46989/0991 |
| ’003 | 11,724,003 | Firearm Trigger Mechanism | 61499/0329 |
| ’336 | 12,036,336 | Firearm Trigger Mechanism | Appl. filed by ABC IP LLC |
| ’807 | 12,274,807 | Firearm Trigger Mechanism | Appl. filed by ABC IP LLC |
| ’403 | 12,636,403 | Firearm Trigger Mechanism | Appl. filed by ABC IP LLC |

17. Rare Breed is the exclusive licensee of the Patents-in-Suit.

**Marking**

18. Rare Breed sells various products that practice the Patents-in-Suit, including the following:

| RBT Product | Platform | Patent(s) |
|---|---|---|
| FRT-15L3® | AR-15 | ’223, ’003, ’336, ’807, ’403 |
| FRT-15L3® (Flat) | AR-15 | ’223, ’003, ’336, ’807, ’403 |
| FRT-15L3® (MIL) | AR-15 | ’223, ’003, ’336, ’807, ’403 |
| FRT-15C3® | AR-15 | ’247, ’159, ’403 |
| FRT-15C3® (Flat) | AR-15 | ’247, ’159, ’403 |
| FRT-MR3™ | AR-15 (piston-driven) | ’223, ’003, ’336, ’807, ’403 |
| FRT-MR3™ (Flat) | AR-15 (piston-driven) | ’223, ’003, ’336, ’807, ’403 |
| FRT-MR3™ (MIL) | AR-15 (piston-driven) | ’223, ’003, ’336, ’807, ’403 |
| FRT-RD3™ (SEF) | HK MP5/SP5 | ’223, ’003, ’336, ’807, ’403 |
| FRT-RD3™ (AMBI) | HK MP5/SP5 | ’223, ’003, ’336, ’807, ’403 |

| | | |
|---|---|---|
| FRT-AP3™ | B&T APC9/APC40 | ’247, ’159, ’403 |
| FRT-SG3™ | B&T SPC9/SPC45/GHM9/GHM45 | ’247, ’159, ’403 |
| FRT-22® | Ruger® 10/22® | ’223, ’003, ’336, ’807, ’403 |

19. Each of the above products is physically marked with the following: “PATENTS: RBTPATENTS.COM.”

20. RBTPatents.com routes consumers to Rare Breed’s website, https://rarebreedtriggers.com/patents, which informs consumers that Rare Breed’s products are protected in the United States by one or more patents owned by ABC IP, LLC. The website identifies which patents are practiced by each of Rare Breed’s products.

21. Accordingly, to the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the Patents-in-Suit.

## V. FORCED RESET TRIGGER TECHNOLOGY

22. A typical AR-15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a standard disconnector AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of the bolt carrier cocks the hammer on the disconnector, and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

23. In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

24. In contrast, in a forced reset trigger mechanism, cycling of the bolt carrier or bolt mechanically moves the trigger member to the reset position and holds it there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

## VI. THE PATENTED INVENTIONS

25. The '247 and '159 patents provide a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow an accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a "forced reset" semiautomatic mode and uses a cam, rotated by cycling of the action, to cause the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position.

26. The '784 patent provides a device that works in a trigger system as an extended trigger member locking mechanism for use with a semiautomatic firearm that employs, in some embodiments, a "deflectable extension of the locking member that is actuated by forward movement of the bolt carrier," among other innovations as explicitly claimed. Certain inventions of the '784 patent overcome the geometric limitations of prior art designs for use in multiple and

varied semiautomatic firearm designs by allowing a locking member to deflect or fold separately from the body portion of the locking member when contacted by the forward portion of the bolt carrier as it cycles to the rear.

27. The ’538 patent provides a safety mechanism for a firearm that employs a cam selector, a lever, and a trigger. The cam selector contains multiple recesses and is configured to operate between a first mode, a second mode, and a third mode. In the first mode, a portion of the trigger referred to as a first trigger tail portion is movable within the first recess. In the second mode, the first trigger tail portion is allowed to engage the second recess and be moved down by a cam portion of the second recess when the cam selector rotates. In the third mode, the cam selector is configured to prevent the trigger from being pulled.

28. The ’223 patent describes and claims a device in which the cycling of the action causes hammer contact with the trigger member to mechanically reset the hammer and trigger member. A locking bar prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

29. The ’003, ’336, and ’807 patents describe and claim a similarly operating device with the feature that it can be selected to operate in either of two distinct modes: (1) standard disconnector semiautomatic mode and (2) “forced reset” semiautomatic mode.

30. The ’403 patent describes and claims a similarly operating device that can be selected to operate in either of two distinct modes: (1) standard disconnector semiautomatic mode and (2) “forced reset” semiautomatic mode.

31. The claims of the Patents-in-Suit define the scope of the patented inventions.

## VII. THE ACCUSED PRODUCT FAMILIES

32. The accused products fall into five product families. A family is defined by the design and operation of its fire-control mechanism, not by its maker or seller. Products in a family

operate the same way in the respects the asserted claims address, whether sold as a complete unit, a kit, a part, or installed in a lower receiver. Differences among the products in a family, such as branding, labeling, color, finish, material, method of manufacture, packaging, an ambidextrous selector, or an external housing, do not affect any element of the asserted claims. In this Complaint, the "user" is the person operating a firearm in which a family product is installed.

33. On information and belief, Defendants are making, using, selling, and/or offering for sale products that embody the technology claimed in the Patents-in-Suit, including the Super Safety, the MARC Selector, the Disruptor, the ARC-Fire, and the Kabuto described below (the "Accused Products"). Stark80 has admitted that it sells, or has offered for sale and sold, products marketed as the Super Safety (including partial and complete kits), the MARC Selector, the Disruptor, the ARC-Fire, and the Kabuto. (Dkt. 25 ¶¶ 36–37, 41, 45, 51–52, 55–56.)

| Family | What it is | Patents asserted | Charts |
|---|---|---|---|
| Super Safety | Three-position cam safety selector, sold as a partial or complete kit, with other firearm parts, or installed. | '247, '784, '538, '159, '403 | K-1 to K-5 |
| Atrius Selector | Three-position forced reset selector, sold alone, with other firearm parts, or installed. | '247, '784, '159, '403 | K-7 to K-10 |
| ARC-Fire | Three-position forced reset selector, sold alone, with other firearm parts, or installed. | '247, '784, '159, '403 | K-11 to K-14 |
| Disruptor | Three-position trigger in which hammer contact resets the trigger member and a locking bar holds it until the bolt carrier returns to battery, sold alone, with other firearm parts, or installed. | '223, '003, '336, '807, '403 | K-15 to K-19 |
| Kabuto | Three-position forced reset device whose cam moves a trigger member through a separate cam follower. | '247, '784, '159, '403 | K-21 to K-24 |

**The Super Safety family**

34. The Super Safety family includes the (3-Position) "Super Safety" and every product of the same design and operation, whatever its maker or name. A Super Safety uses a specially made cam and cam lever that replace a standard AR-pattern safety selector, along with a trigger member specially cut to work with the cam.

35. On information and belief, Defendants are making, using, selling, and/or offering for sale Super Safety family products in multiple variants, including at least: (a) a complete assembly, which includes at minimum the cam and cam lever components, which when installed in combination with a standard AR-pattern hammer, disconnector, springs, and a modified trigger, infringes the claims of the ’247, ’784, ’538, ’159, and ’403 patents; (b) as a kit, which includes at minimum the complete assembly and may further include one or more additional components (e.g., a standard AR-pattern hammer, disconnector, standard springs, and a modified trigger); (c) a complete assembly pre-installed in a lower receiver, grip, fire control group, or firearm; (d) components and replacement parts of the complete assembly; and (e) parts specially designed solely for use with the complete assembly (e.g., modified triggers or trigger cutting jigs).

36. On information and belief, Defendants are currently making, using, selling, and/or offering for sale a (3-Position) Super Safety, which belongs to the Super Safety family, through the website www.Stark80.com. As of November 16, 2026, after service of the original Complaint, www.stark80.com continued to offer Super Safety kits, including the “FAPS-15 (Complete Kit) With Lube.” Exemplary photographs from that website are shown below:









37. A Super Safety can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and "forced reset" semiautomatic with cam modes by moving the safety selector laterally between positions.

38. Plaintiffs assert the ’247, ’784, ’538, ’159, and ’403 patents against the Super Safety family.

**The Atrius Selector family**

39. The Atrius Selector family includes the (3-Position) “Atrius Forced Reset Selector,” also sold as the “Atrius Development 3 Position Forced Reset Selector” (the “Atrius Selector”), in single-sided and ambidextrous configurations, including copies of that design such as the Cornfire Arsenal MARC (Milspec Active Reset Conversion), and every product of the same design and operation, whatever its maker or name.

40. On information and belief, Defendants are making, using, selling, and/or offering for sale Atrius Selector family products in multiple variants, including at least: (a) a complete assembly, which includes at minimum the cam and cam lever components, which when installed in combination with a standard AR-pattern hammer, disconnector, springs, and trigger, infringes the claims of the ’247, ’784, ’159, and ’403 patents; (b) as a kit, which includes at minimum the complete assembly and may further include one or more additional components (e.g., a standard AR-pattern hammer, disconnector, and standard springs); (c) a complete assembly pre-installed in a lower receiver, grip, fire control group, or firearm; (d) components and replacement parts of the complete assembly; and (e) parts specially designed solely for use with the complete assembly (e.g., lever blockers).

41. On information and belief, Defendants are currently making, using, selling, and/or offering for sale a (3-Position) “FAPS- MARC” (the “MARC Selector”), which belongs to the Atrius Selector family, through the website www.Stark80.com. An exemplary photograph from that website is shown below:




42. An Atrius Selector can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and "forced reset" semiautomatic with cam modes by rotating the safety selector between positions.

43. Plaintiffs assert the '247, '784, '159, and '403 patents against the Atrius Selector family.

**The ARC-Fire family**

44. The ARC-Fire family includes the Three-Position ARC-Fire trigger device (the "ARC-Fire"), including the ARHK, which incorporates an ARC-Fire within an additional housing, and every product of the same design and operation, whatever its maker or name.

45. On information and belief, Defendants are making, using, selling, and/or offering for sale ARC-Fire family products in multiple variants, including at least: (a) a complete assembly,

which includes at minimum the cam and cam lever components, which when installed in combination with a standard AR-pattern hammer, disconnector, springs, and trigger, infringes the claims of the ’247, ’784, ’159, and ’403 patents; (b) as a kit, which includes at minimum the complete assembly and may further include one or more additional components (e.g., a standard AR-pattern hammer, disconnector, and standard springs); (c) a complete assembly pre-installed in a lower receiver, grip, fire control group, or firearm; (d) components and replacement parts of the complete assembly; and (e) parts specially designed solely for use with the complete assembly (e.g., lever blockers).

46. On information and belief, Defendants are currently making, using, selling, and/or offering for sale a (3-Position) “FAPS- Ambi-Arc” (the “ARC-Fire”), which belongs to the ARC-Fire family, through the website www.Stark80.com. An exemplary photograph from that website is shown below:



47. An ARC-Fire can operate in a “disconnector mode,” which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and “forced reset” semiautomatic (“Active Reset Clutch” or “ARC”) with cam modes by rotating the safety selector between positions.

48. Plaintiffs assert the ’247, ’784, ’159, and ’403 patents against the ARC-Fire family.

**The Disruptor family**

49. The Disruptor family includes the (3-Position) Disruptor, also sold as the “Partisan Disruptor” or “The Triggered Company Disruptor” (the “Disruptor”), products of the design sold as the WOT (in two-position and three-position versions), the “Defender FRT,” and the Dairyland Defender, and every product of the same design and operation, whatever its maker or name.

50. On information and belief, Defendants are making, using, selling, and/or offering for sale Disruptor family products in multiple variants, including at least: (a) complete assembly, which includes the trigger, disconnector, and hammer components, which when installed in an AR-pattern firearm infringes the claims of the ’223, ’003, ’336, ’807, and ’403 patents; (b) as a kit, which includes at minimum the complete assembly and may further include one or more additional components (e.g., an M16-style bolt carrier group, a carbine buffer weight, anti-walk pins); (c) a complete assembly pre-installed in a lower receiver, grip, fire control group, or firearm; (d) components and replacement parts of the complete assembly; and (e) parts specially designed solely for use with the complete assembly.

51. On information and belief, Defendants are currently making, using, selling, and/or offering for sale a (3-Position) Disruptor, including the “Partisan Disruptor” and the “Partisan Disruptor – Black,” which belong to the Disruptor family, through the website www.Stark80.com. Stark80 has admitted that the Disruptor can operate in a forced-reset mode and in a standard

semiautomatic (disconnector) mode. (Dkt. 25 ¶¶ 48–49.) Exemplary photographs from that website are shown below:




52. The Disruptor also operates in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and "forced reset" semiautomatic modes by moving the safety selector between positions.

53. When the Disruptor operates in the "forced reset" mode, the cycling of the action causes hammer contact with the trigger member to mechanically reset the hammer and trigger member. A locking bar or member prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

54. In the standard semiautomatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm again.

55. In the “forced reset” semiautomatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer, causing the trigger member to be mechanically moved to the set position, the safety selector preventing the disconnector hook from catching the hammer hook. Thereafter, when the bolt carrier reaches the substantially in-battery position, the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

56. Plaintiffs assert the ’223, ’003, ’336, ’807, and ’403 patents against the Disruptor family.

**The Kabuto family**

57. The Kabuto family includes the “Kabuto,” products of that design sold as the VxR FRD, ARSS15, Mini K, FRB, and Drop-In FRD, and every product of the same design and operation, whatever its maker or name. In a Kabuto, the cam of the safety selector moves the trigger member toward the set position through a separate cam follower.

58. On information and belief, Defendants are making, using, selling, and/or offering for sale Kabuto family products in multiple variants, including at least: (a) a complete assembly, which includes at minimum the cam and cam follower components, which when installed in combination with a standard AR-pattern hammer, disconnector, springs, and trigger, infringes the claims of the ’247, ’784, ’159, and ’403 patents; (b) as a kit, which includes at minimum the complete assembly and may further include one or more additional components (e.g., a modified selector); (c) a complete assembly pre-installed in a lower receiver, grip, fire control group, or firearm; (d) components and replacement parts of the complete assembly; and (e) parts specially designed solely for use with the complete assembly, such as modified selectors.

59. On information and belief, Defendants have previously or are currently making, using, selling, and/or offering for sale the Kabuto, which embodies the technology claimed in at least the ’247, ’784, ’159, and ’403 patents, through the website www.Stark80.com. As of

November 16, 2026, after service of the original Complaint, www.stark80.com continued to offer the "Kabuto Full Metal Kit" and the "Kabuto Carbon Fiber." An exemplary photograph from that website is shown below:




60. A Kabuto can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and "forced reset" semiautomatic with cam modes by rotating the safety selector between positions.

61. Plaintiffs assert the '247, '784, '159, and '403 patents against the Kabuto family.

**Claim charts**

62. The claim charts listed below, attached as the exhibits shown, compare a representative claim of each Patent-in-Suit to each family against which it is asserted. Each chart shows how a family product meets each limitation when assembled and used as intended.

| Ex. | Family | Patent | Claim |
|---|---|---|---|
| K-1 | Super Safety | '247 | 15 |
| K-2 | Super Safety | '784 | 1 |
| K-3 | Super Safety | '538 | 1 |
| K-4 | Super Safety | '159 | 1 |
| K-5 | Super Safety | '403 | 38 |
| K-7 | Atrius Selector | '247 | 15 |
| K-8 | Atrius Selector | '784 | 1 |

| Ex. | Family | Patent | Claim |
|---|---|---|---|
| K-9 | Atrius Selector | ’159 | 1 |
| K-10 | Atrius Selector | ’403 | 38 |
| K-11 | ARC-Fire | ’247 | 15 |
| K-12 | ARC-Fire | ’784 | 1 |
| K-13 | ARC-Fire | ’159 | 1 |
| K-14 | ARC-Fire | ’403 | 38 |
| K-15 | Disruptor | ’223 | 4 |
| K-16 | Disruptor | ’003 | 4 |
| K-17 | Disruptor | ’336 | 3 |
| K-18 | Disruptor | ’807 | 1 |
| K-19 | Disruptor | ’403 | 38 |
| K-21 | Kabuto | ’247 | 15 |
| K-22 | Kabuto | ’784 | 1 |
| K-23 | Kabuto | ’159 | 1 |
| K-24 | Kabuto | ’403 | 38 |

**Asserted claims**

63. Plaintiffs assert the claims listed below.

| Asserted Patent | Accused Product Family | Asserted Claims |
|---|---|---|
| ’247 Patent | Super Safety Family | 15, 17–20, 23 |
| ’247 Patent | Atrius Selector Family | 15, 17–20, 23 |
| ’247 Patent | ARC-Fire Family | 15, 17–20, 23 |
| ’247 Patent | Kabuto Family | 15 |
| ’784 Patent | Super Safety Family | 1, 3, 4 |
| ’784 Patent | Atrius Selector Family | 1, 4 |
| ’784 Patent | ARC-Fire Family | 1, 4 |
| ’784 Patent | Kabuto Family | 1–4 |
| ’538 Patent | Super Safety Family | 1–13 |
| ’159 Patent | Super Safety Family | 1, 3–17 |
| ’159 Patent | Atrius Selector Family | 1, 3–17 |
| ’159 Patent | ARC-Fire Family | 1, 3–17 |
| ’159 Patent | Kabuto Family | 1, 3–17 |
| ’223 Patent | Disruptor Family | 1, 2, 4–6 |
| ’003 Patent | Disruptor Family | 1–14 |
| ’336 Patent | Disruptor Family | 1–10, 12 |
| ’807 Patent | Disruptor Family | 1–8 |

| Asserted Patent | Accused Product Family | Asserted Claims |
|---|---|---|
| ’403 Patent | Disruptor Family | 1–45, 48–54 |
| ’403 Patent | Super Safety Family | 14–29, 32, 35–39, 53 |
| ’403 Patent | Atrius Selector Family | 14–30, 32, 35–39, 53–55 |
| ’403 Patent | ARC-Fire Family | 14–30, 32, 35–39, 53–55 |
| ’403 Patent | Kabuto Family | 14–30, 32, 35–39, 53–55 |

## VIII. INFRINGEMENT THEORIES

64. **Direct infringement.** A Defendant that, without authority, makes, uses, sells, offers to sell, or imports into the United States a family product directly infringes the asserted claims of a Patent-in-Suit asserted against that family, literally or under the doctrine of equivalents. 35 U.S.C. § 271(a).

65. **Assembled use.** Many family products are sold as kits or parts that the buyer installs in an AR-15-pattern lower receiver. When assembled and used as intended, as the seller’s instructions direct, the resulting fire-control mechanism practices asserted claims, as the claim charts show. A Defendant that assembles, installs, tests, or demonstrates family products, including by installing them in its customers’ firearms, itself makes and uses the claimed inventions and directly infringes. 35 U.S.C. § 271(a).

66. Induced infringement. A Defendant that knows of a Patent-in-Suit and, intending that customers infringe it, provides instructions, installation guides, videos, compatibility statements, or marketing that leads customers to assemble and use family products as claimed, induces infringement. 35 U.S.C. § 271(b).

67. **Contributory infringement.** A Defendant that sells, offers to sell, or imports a component of a family product, such as a cam, reset or transfer lever, lever arm, selector, or cassette or housing assembly, or a family product sold as a kit for assembly, contributes to infringement of a Patent-in-Suit when the component constitutes a material part of the invention and the Defendant

knows it to be especially made or especially adapted for use in an infringement of that patent. 35 U.S.C. § 271(c). These components are not staple articles or commodities of commerce suitable for substantial noninfringing use: they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the Patents-in-Suit.

68. **Individuals: personal participation.** An individual who personally takes part in infringing acts, for example by designing, making, promoting, or selling family products, is liable for that direct infringement whatever the individual's position in a company. So does an individual who makes, sells, or offers to sell family products as a sole proprietor.

69. **Individuals: inducement.** An individual who knows of a Patent-in-Suit and actively and knowingly aids and abets a company's infringement, for example by directing the company to keep making and selling family products after learning of the patent, induces infringement. 35 U.S.C. § 271(b).

**Andert's personal participation**

70. On information and belief, Andert, as the owner and operator of Stark80, personally participates in, directs, and benefits from Stark80's making, using, selling, offering for sale, and promotion of the Accused Products.

71. On information and belief, Andert is Stark80's sole or controlling owner and its manager.

72. On information and belief, Andert decides which products Stark80 makes and sells, how Stark80 advertises them, and what Stark80 posts on www.stark80.com, including the statements described below. Andert's statements confirm his role.

73. On information and belief, Andert also directs the machining, cutting, heat treatment, and finishing that Stark80's website says Stark80 performs to make its products. Andert

thus personally makes, offers, and sells the Accused Products, and he does so knowing of the Patents-in-Suit as alleged below.

74. Stark80 LLC was organized in Wyoming on April 26, 2025, under filing number 2025-001665492. Its Initial Resolutions name a single member, whose first name is "Miguel," as shown in the image below.

**INITIAL RESOLUTIONS**

I, Nat Smith, of Northwest Registered Agent Service Inc being the Organizer of Stark80 LLC, a Wyoming Limited Liability Company, hereby resolve to relinquish signing authority to the Member named below and adopt the following resolutions:

I. **Resolved,** the named Member of the Limited Liability Company are hereby named:

Miguel [redacted]

II. **Resolved,** that Stark80 LLC was organized on 04/26/25 in the State of Wyoming with assigned filing number 2025-001665492.

III. **Resolved,** that the copy of the Articles of Organization of the above named Limited Liability Company is complete.

IV. **Resolved,** that the general provisions of an operating agreement be adopted and included as official records of the Limited Liability Company. If the member chooses to adopt a more detailed operating agreement, then such agreement will take precedence over general provisions in the original operating agreement.

V. **Resolved,** that the member has formed a limited liability company, and is entitled to the full extent of their limitation of liability pursuant to state law. Furthermore, the member's failure to maintain formalities of a limited liability company does not preclude them from liability protection under state law.

Nat Smith
**Organizer**

04/25/2025
Date

Initial Resolution [redacted]

75. Andert's legal name is Miguel Pablo Andert. On information and belief, consumer records associate him, in August 2025, with a mailbox at 30 N Gould St., Sheridan, Wyoming, the registered-agent address that Stark80 gives as its principal place of business. (Dkt. 25, Countercl. ¶ 1.)

76. On information and belief, Andert ran Stark80 as a sole proprietorship in California for years before forming the LLC. By September 2019, Stark80 was selling firearm parts online and describing itself as an "Adelanto California based home business," as shown in a reddit post made by the user u/Stark80, which links to the Stark80 website. On information and belief, Andert lived in Adelanto from at least 2019.




77. On information and belief, Stark80 sold Super Safety family products before Andert formed the LLC. Stark80 calls itself the "Original & Longest Running Super Safety Vendor" on its website (shown in website image below), and Stark80 LLC was raising money for Super Safety litigation by June 12, 2025, seven weeks after it was organized (shown in gofundme images below). On information and belief, Andert made SS sales himself, not through any company, and is directly liable for them under 35 U.S.C. § 271(a) as to each Patent-in-Suit then issued.












78. On information and belief, Andert has continued to run Stark80's business personally since forming the LLC, and he has not kept his own property separate from the LLC's. Writing as "Stark80" in a private message to previous defendant Williamson on August 1, 2026,

he said: "I didn't absorb a lot of parts into the LLC correctly from being a sole proprietor so I can't sell them now." He proposed to "move them at the gun shows and put them into the company as cash," explaining: "I just say I sold the kits at 200$ locally instead of the usual 100$ and then offset it like that."

> **Stark80 9:13:19 PM CDT**
> I just organized all my stuff. Lots of parts we could've sent. I didn't absorb a lot of parts into the LLC correctly from being a sole proprietor so I can't sell them now. Could move them at the gun shows and put them into the company as cash. I just say I sold the kits at 200$ locally instead of the usual 100$ and then offset it like that. AR, Glock and 3d print build kits.

79. On information and belief, the person writing as "Stark80" in those messages is Andert. On August 12, 2026, after sending an image with the instruction to send it "to your lawyer," he wrote that "there's thousands of Miguel's [sic] out there" and that "Miguel I rarely use, every thing else is in a different name." Asked whether Stark80's only connection to Arizona was its "return addy on stuff shipped out," he explained that Stark80 had "started advertising in the local groups," which "are more mohave county." Credit-reporting records have associated Andert with an address in Fort Mohave, Mohave County, Arizona, since January 2025.

> **Stark80 9:58:53 AM CDT**
> Send that to your lawyer...
> Attachment: IMG_0661.jpg | image/jpeg | 217.5 KB | 1094x1419
>
> **Stark80 10:00:01 AM CDT**
> [Attachment-only message]
> Attachment: IMG_0661.jpg | image/jpeg | 215.9 KB | 1094x1419
>
> **You 10:07:37 AM CDT**
> I'm on the fence about that man. I know its only partial info but still. ☹
>
> **Stark80 10:09:55 AM CDT**
> Yea I get that but no real information that isn't public and there's thousands of Miguel's out there. They won't be able to find us simply off that.

> **Stark80 10:25:44 AM CDT**
> Think I'll cycle my P.O. Boxes. If they ask for any address related info give me a heads up. Miguel I rarely use, every thing else is in a different name and since moving nothing here is under that name. Plus it's a civil case, not criminal so they can't get a warrant based on that name alone. Should get you out of the clear for now.

> **You 10:11:28 AM CDT**
> Quoted Stark80 - Jul 21, 2026 10:04 AM: We've seen the p320 force reset but didn't know it got released
> I saw they posted the install on one of the FB groups yesterday as a community project.
>
> **You 10:14:53 AM CDT**
> Quoted Stark80 - Jul 21, 2026 10:11 AM: Randomly emailed us.
> That's suspicious on all levels. The only thing that's remotely AZ is your return addy on stuff shipped out correct?
>
> **Stark80 10:23:13 AM CDT**
> Think it's because we started advertising in the local groups how ever we didn't put a specific location. The groups are more mohave county/laughlin/needles, curious how he hit on the exact city when the post are vague.

80. On information and belief, Andert designs the Accused Products, stocks them, and knows that Plaintiffs accuse them of infringing the Patents-in-Suit. He wrote on August 1, 2026, that "[t]he machinist and I work on designs." On July 23, 2026, he announced that Stark80's own Kabuto product would be named the "FU'RB," explaining that the name could stand for an expletive directed at "rare breed." On July 25, 2026, he wrote: "We defeat their patents on the super safety and it automatically knocks out the kabuto case." And on August 12, 2026, nearly two months after this action was filed, he reported having "like 700 AR SS ready to go," referring to Super Safety units for AR-pattern rifles

> **Stark80 9:03:25 PM CDT**
> He's got to be fast forward tactical. He buys direct off the machinist. The machinist and I work on designs, we let the machinist openly run them to offer to other guys without our interference.

> **Thursday, July 23, 2026**
> **Stark80 2:32:43 PM CDT**
> Our own branded kabuto is going to be called the FU'RB. Fuck ugly reset button or fuck u rare breed. Every one else seems to be naming it weird stuff so think it's a fitting name for ours.

> **You 4:57:04 PM CDT**
> 👍 if things get sticky I may holler at him about his lawyer. Had no idea Midnight was TN.
>
> **Stark80 4:58:01 PM CDT**
> Yea but he's kabuto only. Doesn't really help in our case. Majority of our hinges around the super safety. We defeat their patents on the super safety and it automatically knocks out the kabuto case.
> Reactions: 👍 by You
>
> **You 5:00:24 PM CDT**
> Is Hoffmans case in limbo? Without Stamboulieh posting updates I've not seen or heard any progress.
>
> **Stark80 5:06:04 PM CDT**
> Every one's in a wait pattern. The courts take for ever. This is going to be around 3-4 years total time we were told, with 5-10k$ paid monthly to the lawyers. Now that's just our costs, their over 10 companies enjoined under the same lawyer and that's just the guys we know about. In actuality there's hundreds of companies and a lot more unknown to us under them.

> **Stark80 4:37:48 PM CDT**
> We have like 700 AR SS ready to go for him. May need run a steep sale to clear them out. I use credit with my machinist, on the hook for a lot right now.

**Defendants' inducing and contributing acts**

81. On information and belief, in addition to their direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the Patents-in-Suit, knowing that those steps will induce, encourage, and facilitate direct infringement by others. Those

steps include encouraging, advertising, promoting, and instructing others to use, and how to use, the Accused Products while selling them through www.Stark80.com. For example, Stark80 sells the Super Safety as partial and complete kits that the customer installs in an AR-15-pattern lower receiver, and it sells the Kabuto as a "Full Metal Kit." Stark80 also promotes itself on its website as the "Original & Longest Running Super Safety Vendor." Andert is liable under 35 U.S.C. § 271(b) for inducing the infringement of the Patents-in-Suit for the infringing sales he made himself either as a sole proprietor or as a corporate officer of Stark80.

82. On information and belief, Defendants know or should know that these activities induce others to directly infringe the Patents-in-Suit.

83. On information and belief, Defendants also contribute to the infringement of the Patents-in-Suit by others, including their customers, by selling, offering for sale, and/or importing components of the Accused Products, such as the cam or cam lever arm of the Super Safety (sold in partial kits that include at minimum those components), the MARC Selector, the ARC-Fire, and the Kabuto, and the trigger assembly of the Disruptor. Those components are not suitable for substantial noninfringing use because they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the Patents-in-Suit.

## IX. NOTICE, KNOWLEDGE, AND WILLFULNESS

84. Defendants' website includes language on the page of products accused herein that refers to Plaintiffs, including by name, which, on information and belief, shows that Defendants are aware of Plaintiffs and their patent and trademark rights and that those rights are relevant to the products Defendants are making, using, selling, offering for sale, and/or importing and the marks Defendants are using in connection with those sales. For example, Stark80's product page for its FAPS-15 S80 Remix Complete Kit tags the product as a "Hoffman Tactical Design" and states that any reference to "Rare Breed Triggers" or "FRT" triggers is meant "to assist customers

in identifying relevant product types or alternatives." Stark80's website also calls Stark80 a "Super Safety Legal Defense Member," and a Stark80 product page states that purchases go toward "the super safety and hoffman legal defense fund." On information and belief, those statements refer to Plaintiffs' suit against Hoffman Tactical LLC, the company that designed the Super Safety. In that suit the court preliminarily enjoined Hoffman Tactical on February 11, 2026, from making or selling "the Super Safety device or any derivatives of it" under the '247 and '784 patents. *ABC IP, LLC v. Hoffman*, No. 1:25-cv-00389-CLC-CHS, Doc. 46 at 1–2 (E.D. Tenn. Feb. 11, 2026). On information and belief, Defendants therefore knew of at least the '247 and '784 patents, and that Plaintiffs contend Super Safety designs infringe them, no later than when they posted those statements.

> Stark80 is an independent manufacturer and is not affiliated with, endorsed by, or associated with Rare Breed Triggers, ABC IP LLC, RBTM, or any related entity.
>
> The terms "FRT," "Rare Breed Triggers," "forced reset trigger," and similar phrases may be used on this website strictly for descriptive, informational, and search-related purposes, including to describe product function, category, or compatibility. Such use is made in a nominative and descriptive manner only and does not imply any affiliation, authorization, sponsorship, or endorsement.
>
> Stark80 products are independently designed and manufactured. Any reference to Rare Breed Triggers or FRT triggers is solely to assist customers in identifying relevant product types or alternatives within the forced reset trigger category.
>
> All trademarks, trade names, and brand names are the property of their respective owners.

85. On information and belief, Defendants have known of the Patents-in-Suit asserted against them, and that Plaintiffs accuse the Accused Products of infringing them, at least since service of the original Complaint in *ABC IP, LLC et al. v. Stark 80 LLC et al.*, No. 2:26-cv-00038 (M.D. Tenn. filed June 13, 2026), which asserted the '247, '784, '538, '159, '223, '003, '336, '807, and '403 patents against them, or when Defendants included the above language on their website. Defendants have continued to make, use, sell, and offer for sale the Accused Products after that

notice. Stark80 was served with the original Complaint, and on August 17, 2026, it answered through counsel. (Dkt. 25.)

86. On information and belief, Andert, as Stark80's owner and manager, received and reviewed the original Complaint and authorized Stark80's answer, and so has known of the Patents-in-Suit and of Plaintiffs' infringement allegations since no later than July 5, 2026, and he continued to stock and promote the Accused Products afterward.

87. Each Defendant has known of each other Patent-in-Suit asserted against it, in any event, since service of the first complaint that asserted that patent against it.

88. A Defendant that, after learning of a Patent-in-Suit and how its products are accused of infringing it, continues to make, sell, or promote those products infringes willfully. Plaintiffs seek enhanced damages under 35 U.S.C. § 284 against that Defendant.

89. Plaintiffs' damages run from the earlier of the date Plaintiffs' marking began under 35 U.S.C. § 287(a), *see* above, and the date of actual notice to the Defendant, including notice by the filing of suit.

## X. THE FRT® MARKS

90. RBTM owns the FRT® trademark and its variations, the registrations and applications listed below, and the common-law rights in those marks (together, the "FRT® marks"). ABC assigned the registrations and applications, with their goodwill, to RBTM by an assignment executed May 26, 2026, and submitted to the United States Patent and Trademark Office for recording on June 11, 2026 (Assignment IDs 1867613 and 1867473). RBTM is the exclusive licensee of the FRT® marks, with the right to enforce them.

91. The following FRT® marks are registered with the United States Patent and Trademark Office for triggers for firearms (the "Registered FRT® Marks"):

| Mark | Reg. No. | Registered | Serial No. | Assignment to RBTM LLC |
|---|---|---|---|---|
| FRT® | 8,187,914 | Mar. 24, 2026 | 97248519 | Reel: 009301, Frame: 0033 |
| FRT-15® | 7,004,418 | Mar. 21, 2023 | 97245949 | Reel: 009301, Frame: 0033 |
| FRT-22® | 8,232,406 | Apr. 28, 2026 | 97248530 | Reel: 009301, Frame: 0033 |
| FRT-47® | 8,232,405 | Apr. 28, 2026 | 97248528 | Reel: 009301, Frame: 0033 |
| FRT-15L3® | 8,225,451 | Apr. 21, 2026 | 98715335 | Reel: 009301, Frame: 0033 |
| FRT-15C3® | 8,369,662 | July 28, 2026 | 98715353 | Reel: 009300, Frame: 0614 |

92. RBTM also owns the following applications to register marks for triggers for firearms:

| Mark | Serial No. | Status | Assignment to RBTM LLC |
|---|---|---|---|
| FRT-MR3™ | 99714625 | Pending | Reel: 009300, Frame: 0614 |
| FRT-RD3™ | 99714703 | Pending | Reel: 009300, Frame: 0614 |

93. Since at least 2020, the FRT® mark has been used by Rare Breed to identify a unique trigger for firearms, which has been a remarkably successful offering. As a result of the long-term and high-profile use, the FRT® mark has come to be uniquely identified with Rare Breed and is a valuable identifier of Rare Breed's products.

94. The FRT® marks are inherently distinctive and have acquired significant goodwill in the marketplace through Plaintiffs' continuous and substantially exclusive use of those marks in commerce. As a result of their widespread and continuous use, the FRT® marks have become uniquely associated in the minds of consumers and the trade with Plaintiffs.

95. The reputation Plaintiffs have built in the FRT® marks is of great value to Plaintiffs.

96. A product that does not originate with Plaintiffs is not a Rare Breed FRT® product, whatever its seller calls it. A seller's unauthorized use of the FRT® marks to identify and promote its products is likely to mislead consumers into believing that the seller's products are Plaintiffs' products, or are endorsed by or associated with Plaintiffs.

97. Defendants are advertising their products as "FRT" as shown at: www.Stark80.com. Exemplary images are shown below:







98. Despite Defendants' marketing, Defendants' products are **not** one of Plaintiffs' FRT products.

99. Defendants' unauthorized use of the FRT Marks to identify and promote their products is likely to mislead consumers into falsely believing that Defendants' products are in fact Plaintiffs' products, or are endorsed by or associated with Plaintiffs.

100. The only reason Defendants would use the FRT Marks in connection with their products is to trade on the goodwill Plaintiffs have developed in the FRT Marks, and thus Defendants' conduct is willful.

## XI. CLAIMS FOR RELIEF

### COUNT I: INFRINGEMENT OF THE ’247 PATENT (U.S. PATENT NO. 12,038,247)

101. Plaintiffs incorporate the paragraphs of §§ I–IX.

102. Defendants have infringed and continue to infringe at least claim 15 of the ’247 patent, literally or under the doctrine of equivalents, by making, using, selling, offering to sell, or importing into the United States, without authority, Accused Products of the Super Safety, Atrius Selector, ARC-Fire, and Kabuto families, in violation of 35 U.S.C. § 271(a).

103. Defendants have also induced infringement of the ’247 patent in violation of 35 U.S.C. § 271(b).

104. Defendants have contributed to infringement of the ’247 patent in violation of 35 U.S.C. § 271(c).

105. Defendants’ infringement of the ’247 patent has been willful.

106. Defendants’ infringement has damaged Plaintiffs, who are entitled to damages adequate to compensate for it, and in no event less than a reasonable royalty. 35 U.S.C. § 284.

107. Defendants’ infringement has caused and will continue to cause Plaintiffs irreparable harm for which damages are not an adequate remedy, and Plaintiffs are entitled to an injunction. 35 U.S.C. § 283.

### COUNT II: INFRINGEMENT OF THE ’784 PATENT (U.S. PATENT NO. 12,031,784)

108. Plaintiffs incorporate the paragraphs of §§ I–IX.

109. Defendants have infringed and continue to infringe at least claim 1 of the ’784 patent, literally or under the doctrine of equivalents, by making, using, selling, offering to sell, or importing into the United States, without authority, Accused Products of the Super Safety, Atrius Selector, ARC-Fire, and Kabuto families, in violation of 35 U.S.C. § 271(a).

110. Defendants have also induced infringement of the ’784 patent in violation of 35 U.S.C. § 271(b).

111. Defendants have contributed to infringement of the ’784 patent in violation of 35 U.S.C. § 271(c).

112. Defendants’ infringement of the ’784 patent has been willful.

113. Defendants’ infringement has damaged Plaintiffs, who are entitled to damages adequate to compensate for it, and in no event less than a reasonable royalty. 35 U.S.C. § 284.

114. Defendants’ infringement has caused and will continue to cause Plaintiffs irreparable harm for which damages are not an adequate remedy, and Plaintiffs are entitled to an injunction. 35 U.S.C. § 283.

**COUNT III: INFRINGEMENT OF THE ’538 PATENT (U.S. PATENT NO. 12,529,538)**

115. Plaintiffs incorporate the paragraphs of §§ I–IX.

116. Defendants have infringed and continue to infringe at least claim 1 of the ’538 patent, literally or under the doctrine of equivalents, by making, using, selling, offering to sell, or importing into the United States, without authority, Accused Products of the Super Safety family, in violation of 35 U.S.C. § 271(a).

117. Defendants have also induced infringement of the ’538 patent in violation of 35 U.S.C. § 271(b).

118. Defendants have contributed to infringement of the ’538 patent in violation of 35 U.S.C. § 271(c).

119. Defendants’ infringement of the ’538 patent has been willful.

120. Defendants’ infringement has damaged Plaintiffs, who are entitled to damages adequate to compensate for it, and in no event less than a reasonable royalty. 35 U.S.C. § 284.

121. Defendants' infringement has caused and will continue to cause Plaintiffs irreparable harm for which damages are not an adequate remedy, and Plaintiffs are entitled to an injunction. 35 U.S.C. § 283.

**COUNT IV: INFRINGEMENT OF THE '159 PATENT (U.S. PATENT NO. 12,578,159)**

122. Plaintiffs incorporate the paragraphs of §§ I–IX.

123. Defendants have infringed and continue to infringe at least claim 1 of the '159 patent, literally or under the doctrine of equivalents, by making, using, selling, offering to sell, or importing into the United States, without authority, Accused Products of the Super Safety, Atrius Selector, ARC-Fire, and Kabuto families, in violation of 35 U.S.C. § 271(a).

124. Defendants have also induced infringement of the '159 patent in violation of 35 U.S.C. § 271(b).

125. Defendants have contributed to infringement of the '159 patent in violation of 35 U.S.C. § 271(c).

126. Defendants' infringement of the '159 patent has been willful.

127. Defendants' infringement has damaged Plaintiffs, who are entitled to damages adequate to compensate for it, and in no event less than a reasonable royalty. 35 U.S.C. § 284.

128. Defendants' infringement has caused and will continue to cause Plaintiffs irreparable harm for which damages are not an adequate remedy, and Plaintiffs are entitled to an injunction. 35 U.S.C. § 283.

**COUNT V: INFRINGEMENT OF THE '223 PATENT (U.S. PATENT NO. 10,514,223)**

129. Plaintiffs incorporate the paragraphs of §§ I–IX.

130. Defendants have infringed and continue to infringe at least claim 4 of the '223 patent, literally or under the doctrine of equivalents, by making, using, selling, offering to sell, or

importing into the United States, without authority, Accused Products of the Disruptor family, in violation of 35 U.S.C. § 271(a).

131. Defendants have also induced infringement of the ’223 patent in violation of 35 U.S.C. § 271(b).

132. Defendants have contributed to infringement of the ’223 patent in violation of 35 U.S.C. § 271(c).

133. Defendants’ infringement of the ’223 patent has been willful.

134. Defendants’ infringement has damaged Plaintiffs, who are entitled to damages adequate to compensate for it, and in no event less than a reasonable royalty. 35 U.S.C. § 284.

135. Defendants’ infringement has caused and will continue to cause Plaintiffs irreparable harm for which damages are not an adequate remedy, and Plaintiffs are entitled to an injunction. 35 U.S.C. § 283.

**COUNT VI: INFRINGEMENT OF THE ’003 PATENT (U.S. PATENT NO. 11,724,003)**

136. Plaintiffs incorporate the paragraphs of §§ I–IX.

137. Defendants have infringed and continue to infringe at least claim 4 of the ’003 patent, literally or under the doctrine of equivalents, by making, using, selling, offering to sell, or importing into the United States, without authority, Accused Products of the Disruptor family, in violation of 35 U.S.C. § 271(a).

138. Defendants have also induced infringement of the ’003 patent in violation of 35 U.S.C. § 271(b).

139. Defendants have contributed to infringement of the ’003 patent in violation of 35 U.S.C. § 271(c).

140. Defendants’ infringement of the ’003 patent has been willful.

141. Defendants' infringement has damaged Plaintiffs, who are entitled to damages adequate to compensate for it, and in no event less than a reasonable royalty. 35 U.S.C. § 284.

142. Defendants' infringement has caused and will continue to cause Plaintiffs irreparable harm for which damages are not an adequate remedy, and Plaintiffs are entitled to an injunction. 35 U.S.C. § 283.

**COUNT VII: INFRINGEMENT OF THE '336 PATENT (U.S. PATENT NO. 12,036,336)**

143. Plaintiffs incorporate the paragraphs of §§ I–IX.

144. Defendants have infringed and continue to infringe at least claim 3 of the '336 patent, literally or under the doctrine of equivalents, by making, using, selling, offering to sell, or importing into the United States, without authority, Accused Products of the Disruptor family, in violation of 35 U.S.C. § 271(a).

145. Defendants have also induced infringement of the '336 patent in violation of 35 U.S.C. § 271(b).

146. Defendants have contributed to infringement of the '336 patent in violation of 35 U.S.C. § 271(c).

147. Defendants' infringement of the '336 patent has been willful.

148. Defendants' infringement has damaged Plaintiffs, who are entitled to damages adequate to compensate for it, and in no event less than a reasonable royalty. 35 U.S.C. § 284.

149. Defendants' infringement has caused and will continue to cause Plaintiffs irreparable harm for which damages are not an adequate remedy, and Plaintiffs are entitled to an injunction. 35 U.S.C. § 283.

**COUNT VIII: INFRINGEMENT OF THE '807 PATENT (U.S. PATENT NO. 12,274,807)**

150. Plaintiffs incorporate the paragraphs of §§ I–IX.

151. Defendants have infringed and continue to infringe at least claim 1 of the ’807 patent, literally or under the doctrine of equivalents, by making, using, selling, offering to sell, or importing into the United States, without authority, Accused Products of the Disruptor family, in violation of 35 U.S.C. § 271(a).

152. Defendants have also induced infringement of the ’807 patent in violation of 35 U.S.C. § 271(b).

153. Defendants have contributed to infringement of the ’807 patent in violation of 35 U.S.C. § 271(c).

154. Defendants’ infringement of the ’807 patent has been willful.

155. Defendants’ infringement has damaged Plaintiffs, who are entitled to damages adequate to compensate for it, and in no event less than a reasonable royalty. 35 U.S.C. § 284.

156. Defendants’ infringement has caused and will continue to cause Plaintiffs irreparable harm for which damages are not an adequate remedy, and Plaintiffs are entitled to an injunction. 35 U.S.C. § 283.

**COUNT IX: INFRINGEMENT OF THE ’403 PATENT (U.S. PATENT NO. 12,636,403)**

157. Plaintiffs incorporate the paragraphs of §§ I–IX.

158. Defendants have infringed and continue to infringe at least claim 38 of the ’403 patent, literally or under the doctrine of equivalents, by making, using, selling, offering to sell, or importing into the United States, without authority, Accused Products of the Super Safety, Atrius Selector, ARC-Fire, Disruptor, and Kabuto families, in violation of 35 U.S.C. § 271(a).

159. Defendants have also induced infringement of the ’403 patent in violation of 35 U.S.C. § 271(b).

160. Defendants have contributed to infringement of the ’403 patent in violation of 35 U.S.C. § 271(c).

161. Defendants' infringement of the '403 patent has been willful.

162. Defendants' infringement has damaged Plaintiffs, who are entitled to damages adequate to compensate for it, and in no event less than a reasonable royalty. 35 U.S.C. § 284.

163. Defendants' infringement has caused and will continue to cause Plaintiffs irreparable harm for which damages are not an adequate remedy, and Plaintiffs are entitled to an injunction. 35 U.S.C. § 283.

**COUNT XI: TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)**

164. In this count, "Plaintiffs" means RBTM and Rare Breed. Plaintiffs incorporate the paragraphs of §§ I–III and X.

165. As described above, RBTM is the owner and Rare Breed is the exclusive licensee of the Registered FRT® Marks in connection with firearm triggers.

166. The federal trademark registrations for the Registered FRT® Marks are in full force and effect. RBTM owns all right, title, and interest in and to these registrations.

167. Plaintiffs' use of and rights in the Registered FRT® Marks predate any use by Defendant.

168. Defendant is wrongfully using "FRT" as a source identifier in U.S. commerce in connection with the distribution, advertising, or sale of firearm trigger products.

169. Defendant's use of the Registered FRT® Marks was and is without Plaintiffs' consent. Such unauthorized use is likely to confuse consumers as to the origin, sponsorship, endorsement, or affiliation of Defendant's products, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

170. Defendant's unlawful acts were committed, and continue to be committed, with full knowledge of Plaintiffs' prior rights in the FRT® marks, and are knowing, willful, and in bad faith.

171. Defendant's unlawful acts have caused and, unless enjoined by this Court under 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law, including undermining consumers' association of the FRT® marks with Plaintiffs.

172. Plaintiffs are entitled to injunctive relief prohibiting Defendant from using the Registered FRT® Marks and any mark confusingly similar to them.

173. On information and belief, Defendant has realized unjust profits, gains, and advantages from its unlawful actions, including by making sales under the FRT® marks, and has caused Plaintiffs monetary damage in an amount to be determined at trial.

**COUNT XII: FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a)(1)(A))**

174. In this count, "Plaintiffs" means RBTM and Rare Breed. Plaintiffs incorporate the paragraphs of §§ I–III and X.

175. As described above, RBTM owns and Rare Breed is the exclusive licensee of the distinctive FRT® marks in connection with firearm triggers, through the continuous and substantially exclusive use of the FRT® marks since at least as early as 2020, which is well before any use of "FRT" by Defendant.

176. Plaintiffs' common-law rights in the FRT® marks predate Defendant's infringing use of "FRT" and any other confusingly similar name or mark comprised of or containing "FRT."

177. Defendant is using "FRT" as a source identifier in U.S. commerce in connection with the distribution, advertising, or sale of firearm trigger products.

178. Defendant's actions constitute use of a false designation of origin that wrongfully and falsely designates the origin of Defendant's goods and is likely to cause confusion or mistake, or to deceive, as to affiliation, connection, or association, or as to the origin, sponsorship, or approval of Defendant's goods by Plaintiffs. These actions constitute a false designation of origin

in interstate commerce in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

179. Defendant's unlawful acts were committed, and continue to be committed, with full knowledge of Plaintiffs' prior rights in the FRT® marks, and are knowing, willful, and in bad faith.

180. Defendant's unlawful acts have caused and, unless enjoined by this Court under 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law, including undermining consumers' association of the FRT® marks with Plaintiffs.

181. Plaintiffs are entitled to injunctive relief prohibiting Defendant from using the FRT® marks or any other mark confusingly similar to the FRT® marks.

182. On information and belief, Defendant has realized unjust profits, gains, and advantages from its unlawful actions, including by making sales under the FRT® marks, and has caused Plaintiffs monetary damage in an amount to be determined at trial.

**COUNT XIII: COMMON-LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

183. In this count, "Plaintiffs" means RBTM and Rare Breed. Plaintiffs incorporate the paragraphs of §§ I–III and X.

184. As described above, RBTM owns and Rare Breed is the exclusive licensee of the distinctive FRT® marks in connection with firearm triggers, through the continuous use of the marks since at least as early as 2020, before any use of "FRT" by Defendant.

185. Plaintiffs' common-law rights in the FRT® marks predate Defendant's infringing use of "FRT" and any other confusingly similar mark comprised of or containing "FRT."

186. Defendant is using "FRT" as a source identifier in U.S. commerce in connection with the distribution, sale, offering for sale, and advertising of firearm triggers.

187. Defendant's use of "FRT" was and is without Plaintiffs' consent. Such unauthorized use is likely to confuse consumers as to the origin, sponsorship, endorsement, or affiliation of Defendant's goods. Defendant's acts constitute trademark infringement and unfair competition under common law.

188. Defendant's unlawful acts were committed, and continue to be committed, with full knowledge of Plaintiffs' prior rights in the FRT® marks, and are knowing, willful, and in bad faith.

189. Defendant's acts have caused and, unless enjoined by this Court, will continue to cause great harm and irreparable injury to Plaintiffs for which they have no adequate remedy at law, including undermining consumers' association of the FRT® marks with Plaintiffs.

190. Plaintiffs are entitled to injunctive relief prohibiting Defendant from using "FRT" or any other mark confusingly similar to the FRT® marks.

191. On information and belief, Defendant has realized unjust profits, gains, and advantages from its unlawful actions, including by making sales under the FRT® marks, and has caused Plaintiffs monetary damage in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants as follows:

(a) a judgment that the Defendant has infringed each asserted Patent-in-Suit;

(b) damages adequate to compensate for the infringement, in no event less than a reasonable royalty, with pre- and post-judgment interest and costs (35 U.S.C. § 284);

(c) enhanced damages for willful infringement (35 U.S.C. § 284);

(d) a preliminary and permanent injunction against further infringement of any unexpired Patent-in-Suit (35 U.S.C. § 283);

(e) a finding that the case is exceptional and an award of reasonable attorneys' fees (35 U.S.C. § 285);

(f) on the trademark counts, an injunction (15 U.S.C. § 1116);

(g) on the trademark counts, the Defendant's profits, Plaintiffs' damages, and costs (15 U.S.C. § 1117(a));

(h) on the trademark counts, enhanced damages and attorneys' fees where the law allows (15 U.S.C. § 1117(a)); and

(i) any other relief the Court finds just.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable. Fed. R. Civ. P. 38.

DATED: November 19, 2026

Respectfully submitted,

*/s/ Matthew A. Colvin*

Matthew A. Colvin
Texas Bar No. 24087331
Carl E. Bruce
Texas Bar No. 24036278
Bret T. Winterle
Texas Bar No. 24084249
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: colvin@fr.com
bruce@fr.com
winterle@fr.com
Tel: (214) 747-5070
Fax: (214) 747-2091

Benjamin J. Christoff
DC Bar No. 1025635
FISH & RICHARDSON P.C.
1000 Maine Avenue SW, Suite 1000
Washington, DC 20024
E-mail: christoff@fr.com
Tel: (202) 783-5070
Fax: (202) 783-2331

______________________________________

Oliver J. Richards
CA Bar No. 390172
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
E-mail: ojr@fr.com
Tel: (858) 678-5070
Fax: (858) 678-5099

Glenn D. Bellamy (admitted pro hac vice)
WOOD HERRON & EVANS LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
E-mail: melissa@gillamsmithlaw.com

***Attorneys for Plaintiffs ABC IP, LLC, Rare Breed Triggers, Inc., and RBTM LLC.***

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing document was served on November 19, 2026, on all counsel of record who are deemed to have consented to electronic service through the Court's CM/ECF system.

*/s/ Matthew A. Colvin*
Matthew A. Colvin